UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

KIMBERLY MITCHELL,
Plaintiff

v.

MACY'S, INC.;
MACY'S RETAIL HOLDINGS, INC.; and
MACY'S EAST
Defendants

CA 08 240 S
C.A. No.

**COMPLAINT AND DEMAND FOR TRIAL**

INTRODUCTORY STATEMENT/NATURE OF THE ACTION

This action is commenced by Kimberly Mitchell (hereafter "Mitchell" or "Plaintiff") against Macy's, Inc.; Macy's Retail Holdings, Inc.; and Macy's East (hereafter "Macy's" or "Employers" or "Defendants"), in order to remedy and seek relief for the Defendants' unlawful and discriminatory employment practices, in violation of Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq.*, the Pregnancy Discrimination Act, and other pertinent statutes.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§451, 1331, 1337, 1343, and 1345. All conditions precedent to establishing this court's jurisdiction have been satisfied.

2. The employment practices hereafter alleged to be unlawful were, and are now, being committed in the State of Rhode Island. Considerations of judicial economy, convenience, and fairness to the litigants warrant exercise of this court's supplemental jurisdiction with respect to Plaintiff's state law claims. Plaintiff's state claims are so related to Plaintiff's federal claims that they form part of the same case or controversy. This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. 1367(a).

3. Venue is proper in this district pursuant to, *inter alia*, 28 U.S.C. 1391(b) and (c) because:

a) the alleged unlawful practices occurred and are continuing to occur within the State of Rhode, and in this judicial district;

b) all records relevant to the alleged unlawful practices are maintained and administered in the Defendants' principal place of business in Warwick, Rhode Island, within this judicial district; and

c) the Plaintiff would currently be employed by the Defendants at its place of business in Warwick, Rhode Island, within this judicial district, but for the Defendants' unlawful employment practices.

4. On November 6, 2007, Mitchell timely filed a formal Charge of Discrimination with the Rhode Island Commission for Human Rights and the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging that she had been subjected to unlawful discrimination and related retaliation on the basis of her gender, status of being

pregnant, and actual/perceived disability. (RICHR # 08 ESE 126/ EEOC #16J-2008-00041).

5. In timely fashion, Mitchell requested Right To Sue authorization from the appropriate administrative agency(ies), and has filed this action within ninety (90) days of her receipt of the appropriate notification(s), and has fulfilled all other conditions precedent to the institution of each count of this action (EXHIBIT A).

PARTIES

6. The Plaintiff, Kimberly Mitchell, a female individual, is a citizen and resident of the Town of Coventry, Rhode Island.

7. On information and belief, Defendant Macy's Retail Holdings, Inc. is a foreign corporation, in the business of owning and operating retail department stores. Defendant Macy's Retail Holdings, Inc. maintains a facility and principal place of business at 7 West 7th Street; Cincinnati, OH 45202. Defendant Macy's, Inc. is a foreign corporation, with a local principal place of business located at 400 Bald Hill Rd.; Warwick Mall; Warwick, RI 02886. Defendant Macy's East is an unincorporated division of Macy's Retail Holdings, Inc. The Defendants are sufficiently joined and intertwined in terms of corporate direction and control over their employees, company procedures and policies for the purposes of the claims at issue in this action, to be held jointly and severally liable.

8. At all times material to the allegations of this Complaint, the Defendants have continuously, and do now, employ at least 100 or more employees.

9. At all times material to the allegations of this Complaint, the Defendants have continuously been engaged in an industry affecting commerce within the meaning of Title VII, 42 U.S.C. §2000e (g) and (h).

10. At all times material to the allegations of this Complaint, the Defendants qualified as an employer and/or have been a covered entity pursuant to applicable provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq*., and any other state or federal statutes referenced in this Complaint. Defendants, at all times pertinent to this action were an employer within the meaning of pertinent provisions of Title VII, and all other provisions pertinent to this action.

11. At all times material to the allegations of this Complaint, Plaintiff was and is an "individual" within the meaning of that definition under Title VII, and is otherwise covered as an individual and/or an employee under the provisions of all other statutes at issue in this action.

## FACTS COMMON TO ALL COUNTS

12. Mitchell, a pregnant female at all times pertinent to this Complaint, was hired by the Defendants during or about the Spring of 2007.

13. Mitchell was hired for the position of Counter Manager in the Cosmetic/Fragrance Department of the Defendants' store located in the Warwick Mall, Warwick, Rhode Island.

14. Upon the Defendants' offer of employment to Mitchell, she apprised the Defendants that she was pregnant.

15. On or about June 18, 2007, Mitchell began orientation and training for her employment and, at or about that time, commenced work.

16. On or about July 16, 2007, Mitchell's physician wrote her a note for submission to the Employer, asking that she be allowed to sit for five minutes at a time as needed, throughout her pregnancy. This was a reasonable accommodation which would not have affected, in any way, Mitchell's ability to perform the essential duties of her position.

17. Mitchell gave a copy of the doctor's note referenced in the previous paragraph to her direct supervisor who held the position of Manager of the Cosmetics and Fragrance Department.

18. Upon presentation of the doctor's note to her supervisor, Mitchell was directed to accompany her supervisor for a meeting with the Defendants' Office Manager.

19. At the meeting referenced in the previous paragraph, Mitchell stated that, due to her pregnancy with twins, it was sometimes necessary during her lunch hour for her to put her feet up, in the employee break-room. She also stated that towards the end of her shift, she occasionally had cramps and aches in her legs and needed to sit for a minute to recover.

20. In response to Mitchell's comments, as referenced in the previous paragraph, she was told by her supervisor and the office manager that she was on a 90-day probation period and needed to "obey the rules of the job," and that these rules prohibited her from sitting. They also stated that they would not honor her doctor's note and that, if Mitchell thought she could not do the job without the accommodation requested by her physician, she could quit the job and they would consider her for rehire after her twins were born and she was ready to return to work.

21. The meeting referenced in the above paragraph ended with Mitchell's supervisor and the office manager stating that Mitchell could keep her job as long as she abided by the "work rules," and as long as she could physically handle the job, unless Mitchell thought the job was now "not a good fit for her."

22. After the meeting referenced in the preceding paragraphs, the Defendants began treating Mitchell in a demeaning fashion, unfairly criticizing her work, in comparison to employees who were not pregnant and/or who had not requested some type of accommodation.

23. For example, on or about July 24, 2007, Mitchell's supervisor, for the first time, approached Mitchell to discuss her job expectations and sales goals. Mitchell's supervisor informed Mitchell that her sales "were down" and reminded her that she was in her "probation period," with a veiled threat that her job was in jeopardy. On information and belief, sales records from the comparable period of the previous year will indicate that sales in the department had increased during Mitchell's employment.

24. From the date Mitchell informed the company that she was pregnant, Mitchell had never been permitted access to the office computer which customarily allows managers to obtain monthly counter numbers. Without such access, routinely provided to other managers, Mitchell was unable to obtain information regarding her daily/monthly sales goals and productivity figures.

25. On or about July 24, 2007, Mitchell asked another manager to assist her in accessing computer figures, with respect to her counter's sales and productivity data. Mitchell's supervisor informed her that she was not allowed to go on the computer, unlike all other counter managers. On information and belief, another Counter Manager hired shortly after Mitchell was permitted immediate access to computer sales and

productivity numbers. When Mitchell mentioned this situation to a former Counter Manager at Macy's, Mitchell was told that the company "must want you out of here."

26. On or about July 30, 2007, Mitchell learned that she had lost one of her unborn twins to a rare and usually fatal disorder.

27. As a result of the loss of her unborn child, Mitchell informed the Employer that she would be out of work on July 30, July 31, and August 1, 2007, to permit her to go to the Tufts Medical Center, for observation, and to receive further treatment and recovery. During this period, Mitchell's supervisor was on vacation.

28. On or about August 6, 2007, Mitchell was informed by the Office Manager that Mitchell had to meet with her supervisor immediately in order to explain the events referenced in Paragraph 26 and 27.

29. Mitchell met with her supervisor on August 6, 2007. Mitchell's supervisor told her that Mitchell should speak with her doctor to see if she should reduce her work schedule to part-time hours. At Mitchell's supervisor's suggestion, Mitchell agreed to do so. Mitchell's supervisor informed Mitchell that she had many part-time positions available in her department. Mitchell's supervisor also stated that a part-time job would be a "better option" for Mitchell because it would allow her to "keep her foot in the door" and preserve a job for her to come back to after the delivery of her baby.

30. On or about August 7, 2007, Mitchell spoke to her physician at Women and Infants Hospital who agreed to write a letter suggesting the option of a part-time position, based on the information provided by Mitchell regarding the encouragement by her supervisor to accept a part-time position.

31. On or about August 10, 2007, Mitchell supplied the note from her doctor to her supervisor.

32. On or about August 14, 2007, Mitchell's supervisor directed Mitchell to go to the Office Manager's office in order to discuss the doctor's note.

33. At the meeting referenced in the previous paragraph, Mitchell's supervisor informed Mitchell that the Human Resources Department was unwilling to place Mitchell into a part-time position. Mitchell's supervisor stated approximately three to four times that the decision to deny Mitchell a part-time position "had nothing to do with her pregnancy." There were numerous part-time positions available in the store which Mitchell was qualified for, and the availability of these positions were posted throughout the store and on various job search websites.

34. In the meeting referenced in the previous paragraph, the office manager stated that it may have been a "direct result" of the fact that Mitchell missed work because of the complications to her pregnancy that the Human Resources Department refused to permit her placement into a part-time position.

35. At the end of the meeting referenced in the preceding paragraph, Mitchell was told to "clock out" and that she was terminated.

36. At this meeting, Mitchell asked if she should speak to Human Resources regarding this situation and was told "don't bother, it would be a waste of time," in an effort by her superiors to discourage and dissuade Mitchell from pursuing internal mechanisms of relief.

37. Upon information and belief, Mitchell was replaced by an individual who was neither pregnant nor requested a reasonable accommodation.

38. At all times, Mitchell performed her duties in a satisfactory manner, exceeding the employer's legitimate expectations in all significant respects. Mitchell was never given any written warnings, counseling, or other documentation to indicate that her sales figures or performance was in any way unsatisfactory.

39. At all times during Mitchell's tenure of employment with the company, she was able to perform the essential functions of her position, with or without reasonable accommodation.

40. The Defendants' conduct reflects, in both purpose and effect, a blatant, willful, and/or malicious pattern of discrimination and unlawful treatment against the

Plaintiff. Such conduct has involved an intentional, reckless, and/or callous indifference to the statutorily protected rights of the Plaintiff. The Defendants knowingly and purposefully subjected the Plaintiff to humiliating, discriminatory, and retaliatory treatment, and terminated her, as a result of her condition of being pregnant, her gender, and because of her disability status and/or the Defendants' perception that she was disabled.

41. The wrongful actions by Defendants and its agents complained of herein were taken without justification, excuse, or defense, but rather were taken in a purposefully discriminatory and unlawful manner, and have caused the Plaintiff lost employment, lost wages, lost benefits, humiliation, embarrassment, emotional and physical harm, and other damages.

**COUNT I**

**RHODE ISLAND FAIR EMPLOYMENT PRACTICES ACT**
**RIGL Sec. 28-5-1 et seq.**
**Including, Section 28-5-6 (2)**

**DISCRIMINATORY TERMS AND CONDITIONS OF EMPLOYMENT**
**UNLAWFUL TERMINATION**

42. The allegations contained in paragraphs 1-41 above are incorporated herein by reference in their entirety.

43. The unlawful practices engaged in by the Defendants were motivated by impermissible and unlawful considerations concerning Plaintiff's gender/pregnancy, such practices include, but are not limited to, Defendants':

a. terminating Plaintiff because of her gender/pregnancy;

b. forcing Plaintiff to work under discriminatory terms and conditions of employment; and

c. retaliating against Plaintiff for asserting her rights to be free from discrimination based on gender/pregnancy.

44. But for the Defendants' intent to discriminate against Plaintiff because of her gender/pregnancy, Defendants would not have terminated Plaintiff, subjected her to discriminatory terms and conditions of employment, or retaliated against her.

45. The Defendants purposefully, maliciously, and without justification or excuse, took discriminatory action with respect to Plaintiff's employment because of Plaintiff's gender/pregnancy. The Defendants' conduct has unlawfully deprived Plaintiff of her employment, income, benefits, privileges, promotions, and other terms and conditions accruing to the employment relationship to which she was entitled; has caused harm to her reputation; and has caused her humiliation, as well as physical and/or emotional injury.

WHEREFORE, Plaintiff prays that judgment be entered herein against Defendants, jointly and severally, and in favor of Plaintiff for all damages and equitable relief available, as hereinafter requested.

**COUNT II**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**42 USC 2000e et seq.**
**as amended by the**
**PREGNANCY DISCRIMINATION ACT OF 1978**
**42 USC § 2000e(k)**
**Discriminatory Terms and Conditions of Employment**
**Unlawful termination**

46. The allegations contained in Paragraphs 1-41, above, are incorporated herein by reference, in their entirety.

47. Plaintiff was qualified to perform all the duties of her position in a satisfactory manner, despite her condition of being pregnant.

48. The Defendants have violated Title VII of the Civil Rights Act of 1964, including Section 701(k), and the Pregnancy Discrimination Act, and other sections.

49. The Defendants' discriminatory conduct, policies, and practices violate the provisions of Title VII of the Civil Rights Act of 1964 and the Pregnancy Discrimination Act by:

a. interfering with Plaintiff's right to avail herself of the full and equal benefit and protection of state and federal laws intended to prevent discrimination in the workplace based on gender/pregnancy;

b. depriving her of the status, benefits, privileges, and other terms and conditions accruing to the employment relationship to which she was entitled;

c. treating her in a hostile, demeaning, and otherwise unlawful manner based on her gender/pregnancy;

d. causing her lost income and benefits, humiliation, physical and emotional injury, a well as harm to her person and professional reputation.

50. The unlawful practices engaged in by the Defendants were motivated by impermissible and unlawful considerations concerning Plaintiff's gender/pregnancy. Such practices include, but are not limited to, Defendants':

a. terminating Plaintiff because of her gender/pregnancy;

b. forcing Plaintiff to work under discriminatory terms and conditions of employment; and

c. retaliating against Plaintiff for asserting her rights to be free from discrimination based on gender/pregnancy; and for opposing practices forbidden under state and federal law.

51. But for the Defendants' intent to discriminate against Plaintiff because of her gender/pregnancy, Defendants would not have terminated Plaintiff, subjected her to discriminatory terms and conditions of employment, or retaliated against her.

52. The Defendants purposefully, maliciously, and without justification or excuse, took discriminatory action with respect to Plaintiff's employment because of Plaintiff's gender/pregnancy. The Defendants' conduct has unlawfully deprived Plaintiff of her employment, income, benefits, privileges, promotions, and other terms and conditions accruing to the employment relationship to which she was entitled; has caused harm to her reputation; and has caused her humiliation, as well as physical and/or emotional injury.

WHEREFORE, Plaintiff prays that judgment be entered herein against Defendants, jointly and severally, and in favor of Plaintiff for all damages and equitable relief available, as hereinafter requested.

**COUNT III**
**THE RHODE ISLAND CIVIL RIGHTS ACT OF 1990**
**R.I.G.L. 42-112-1 ET SEQ.**
**DISCRIMINATORY TERMS AND CONDITIONS OF EMPLOYMENT**
**RETALIATION**
**TERMINATION**

53. Paragraphs 1-41 above are incorporated herein by reference in their entirety.

54. Despite Plaintiff's ability to perform the duties of her position in a satisfactory manner, the Defendants unlawfully subjected Plaintiff to discriminatory terms and conditions of employment, retaliated against Plaintiff, and discharged Plaintiff because of Plaintiff's gender and condition of being pregnant.

55. But for the Defendants' intent to discriminate against Plaintiff because of her gender and condition of being pregnant, the Defendants would not have engaged in the unlawful conduct described in the preceding paragraphs.

56. By its conduct described in the preceding paragraphs, the Defendants have engaged in unlawful conduct in violation of R.I.G.L. 42-112-1 et seq.

57. The Defendants' conduct was undertaken with a reckless and/or callous indifference to the statutorily protected rights of the Plaintiff, and has unlawfully deprived the Plaintiff of her employment, income, benefits, privileges, promotions, and other benefits accruing to the employment relationship, as well as caused harm to her reputation, humiliation, and physical and emotional injury.

WHEREFORE, Plaintiff prays that judgment be entered herein against the Defendants, jointly and severally, and in favor of Plaintiff for all damages and equitable relief available, as hereinafter requested.

**COUNT IV**
**AMERICANS WITH DISABILITIES ACT**
**ADA-42 U.S.C. §12117**
**Discriminatory Terms and Conditions of Employment**
**Failure To Accommodate**
**Unlawful Termination**
**Retaliation**

58. Paragraphs 1-41 above are incorporated herein by reference in their entirety.

59. At all times material to the allegations of this Complaint, Mitchell was a qualified individual with a disability within the meaning of ADA, in that she had a physical or mental impairment that substantially limits one or more of her major life's activities, had a record of such an impairment, and/or was regarded by Defendants as having such an impairment.

60. Despite her disability or impairment, Mitchell was able to perform the essential duties of her position, either with no need for accommodation or with reasonable accommodation.

61. The Defendants have engaged in unlawful employment practices in violation of the ADA §§ 102(a), 102(b)(1) and 102(b)(5)(B), 42 U.S.C. §§12112(a), 12112(b)(1) and 12112(b)(5)(B), in addition to other sections.

62. The unlawful practices engaged in by the Defendants include, but are not limited to, Defendants' conduct in refusing to accommodate Plaintiff, forcing the Plaintiff

to work under discriminatory terms and conditions of employment, retaliating against Plaintiff, and terminating the Plaintiff.

63. But for the Defendants' intent to discriminate against Mitchell because of her status as a qualified person with a disability, and/or because the Defendants perceived Plaintiff as being disabled, Defendants would not have engaged in the conduct referenced in this Complaint.

WHEREFORE, Plaintiff prays that judgment be entered herein against Defendants, jointly and severally, and in favor of Plaintiff for all damages and equitable relief available, as hereinafter requested.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered herein against Defendants, jointly and severally, and in favor of Plaintiff for all damages and equitable relief available, including, but not limited to:

a. an order that Defendants institute and carry out policies, practices and programs which provide equal employment opportunities to qualified individuals regardless of disability/perception of disability; gender, and/or pregnancy status;

b. an order that the Defendants make whole the Plaintiff with appropriate lost earnings, benefits, and interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its

unlawful employment practices, including, but not limited to the reinstatement of Plaintiff to her position of employment, or some other appropriate position, with appropriate increases, benefits status, and promotional opportunities;

c. an order that the Defendants make whole the Plaintiff by providing compensation for any pecuniary losses, including, but not limited to, any costs incurred for health and life insurance premiums, losses in pension entitlement, vacation pay and other benefits, and the costs of seeking new employment, in amount to be determined at trial;

d. an order that the Defendants make whole the Plaintiff by providing compensation for non-pecuniary losses, including, but not limited to emotional pain, suffering, humiliation, and mental anguish in amounts to be proven at trial, including an appropriate award of compensatory damages;

e. grant attorney's fees and the costs of this action;

f. grant punitive damages, as appropriate, to punish the Defendants for its malicious conduct and/or for its reckless and/or callous indifference to the statutorily protected rights of the Plaintiff;

g. grant an appropriate award of prejudgment interest, including an award of interest for all damages awarded to the Plaintiff from the date this cause of action accrued;

h. any and all penalties and damages available pursuant to state or federal statute; and

i. grant such further relief as this Court deems necessary and proper.

DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands trial by jury of all issues pertinent to the causes in this Complaint triable as of right by jury.

Respectfully Submitted,
Kimberly Mitchell
By Her Attorney,

Stephen T. Fanning #3900
305 South Main Street
Providence, RI 02903
401-245-5802/401-245-4520 (FAX)